655 So.2d 881 (1995)
Raymond MURRELL, a/k/a Raymond Jackson
v.
STATE of Mississippi.
No. 91-KA-01245-SCT.
Supreme Court of Mississippi.
April 27, 1995.
Rehearing Denied June 22, 1995.
William T. May, Logan and May, Newton, MS, Charles C. Pearce, Everett & Pearce, Decatur, for appellant.
Michael C. Moore, Atty. Gen., Jeffrey A. Klingfuss, Sp. Ass't. Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
*882 BANKS, Justice, for the Court:
In this appeal we consider an alleged assault in the context of resisting arrest, where there was no testimony that the victim suffered pain, illness or impairment. We conclude that the evidence is such that a new trial is warranted and that a lesser included instruction on resisting arrest should have been given. We also treat the question of whether one may lawfully resist an arrest for the reason that it is being made pursuant to a wrongfully issued warrant where both the arrestee and the arresting officer are unaware of any deficiency. We answer the question in the negative.

I
Murrell was arrested in the town of Union and charged with malicious mischief. When the matter was called before the City Court, Murrell requested an attorney and the matter was postponed for two weeks. When Murrell failed to appear at the appointed time, the city judge issued a warrant for his arrest charging him with contempt of court.
On July 27, 1991, Officers David Boatner and Dwight Griffin attempted to serve the warrant on Murrell after the police received a call that Murrell was at a certain location. When the officers arrived at 106 Chestnut Street, they noticed a woman behind her apartment pointing to another apartment saying, "He went that way." Officer Boatner went to the apartment where he thought Murrell was, but he was told that Murrell was not there. The officers returned to the patrol car and drove around the block. When they returned, they saw Murrell walking from an apartment toward the street.
The officers pulled up to the curb and got out of the car. They advised Murrell that they had a warrant for his arrest. Officer Boatner asked Murrell to put his hands on top of the patrol car. There are varying accounts of what transpired next. Officer Boatner and Griffin testified that as Boatner reached to place the handcuffs on Murrell, Murrell said, "You are not going to put those so and so handcuffs on me." Murrell then "wheeled" from the car and tried to force his way through the officers. Boatner caught one of Murrell's arms and Griffin caught the other. A struggle ensued and the three men fell to the ground. Murrell was on top of Boatner with his hands around Boatner's throat. Griffin grabbed Murrell and attempted to pull him off Boatner but was not able to do so without assistance. Griffin went to the car to radio for help. While Griffin was in the patrol car, Murrell picked Boatner up and threw him to the ground. When Boatner hit the ground, Murrell climbed on top of him. Murrell drew one of his hands in the air as though he was going to hit Boatner. His other hand was around Boatner's throat. When Griffin noticed what was happening, he returned to the scene and again attempted to pull Murrell off Boatner. Officer Billy McCune and Jackie Knight arrived on the scene. With their help, Griffin was able to free Boatner from Murrell's grasp.
David Turner, who lives near the apartment complex where Murrell was apprehended, witnessed a part of what transpired. He saw Murrell struggling with officers and saw him grab Boatner by the waist and throw him to the ground. He heard Griffin tell Boatner to hold him while he, Griffin, called for back up. Griffin said that it took four officers to subdue Murrell.
Defense witness Felecia McClellan testified that her boyfriend was preparing to take Murrell home when the officers approached him. She stated that Murrell told her boyfriend that "he wasn't going to run, that he was going to go ahead and let them take him on down." McClellan said Boatner told Murrell that he had a warrant for his arrest. McClellan said Murrell was facing the car at that time, and Boatner pushed him against the car. McClellan testified that Murrell told Boatner that he did not have to push him because he was going to get in the car. She stated that Boatner pushed Murrell again and said "Well, get on up in there." Boatner pushed Murrell a third time and a struggle ensued in which both men ended up on the ground. It was McClellan's testimony that Griffin stood there for a minute after the struggle began between Murrell and Boatner. After Boatner and Murrell landed on the ground, McClellan testified that Griffin attempted to pull them apart. McClellan *883 testified that Boatner and Murrell had such a tight hold on each other that Griffin had to put his nightstick around Murrell's neck to try to pull him up. During this time, Boatner was urging Murrell to hit him, but Murrell did not hit the officer.
Murrell did not testify.
At the close of the evidence the trial court denied a directed verdict and denied a lesser included offense instruction allowing the jury to find Murrell guilty of resisting arrest. Finally the court denied the proffered instruction to the effect that Murrell had the right to resist an unlawful arrest. Earlier, Murrell had sought to exclude testimony concerning the warrant because of perceived procedural irregularities affecting its issuance. He now brings this appeal of his conviction, asserting that there was insufficient evidence that he was entitled to the resisting arrest instruction and the unlawful arrest instruction.

II
When "considering whether or not the verdict is contrary to the overwhelming weight of the evidence, this Court must accept as true all the evidence which supports the State's position, together with all inferences reasonably flowing therefrom, in the light most favorable to the State's theory of the case." Britt v. State, 520 So.2d 1377, 1379 (Miss. 1988), citing, Haymond v. State, 478 So.2d 297, 300 (Miss. 1985).
First, Murrell argues that the State's indictment was inadequate because it failed to list the elements of the crime for which he was charged. The indictment charged Murrell with:
"willfully, unlawfully, feloniously, and knowingly cause (sic) injury to David Boatner, a human being, and a police officer of the Town of Union, Mississippi Police Department, at a time when David Boatner was acting within the course and scope of his duty as a police officer of the Town of Union, Mississippi Police Department, by throwing the said David Boatner to the ground and choking him about the throat with his hands, contrary to and in violation of Section 97-3-7(1), Miss. Code Ann. (1972).
Because the indictment stated that Murrell "knowingly cause (sic) injury" to Boatner, Murrell argues that the prosecutor bore the burden of proving that he did knowingly cause bodily injury to Boatner. The indictment states that Murrell was charged with violating Miss. Code Ann. 97-3-7(1) which provides:
A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm;
The State argues that the indictment was sufficient to put Murrell on notice that he was charged with assaulting a law enforcement official. This Court has repeatedly stated "an indictment need not use the precise words of the statute." See Allman v. State, 571 So.2d 244 (Miss. 1990). "If an indictment reasonably provides the accused with actual notice and it complies with Rule 2.05 of the Unif.Crim.R.Cir.Ct.Prac., it is sufficient to charge the defendant with the crime." See Alexander v. State, 520 So.2d 127, 129 (Miss. 1988); Harden v. State, 465 So.2d 321, 324 (Miss. 1985).
Murrell also contends that the State failed to meet its burden of proof, and his conviction should be reversed because the State failed to prove each element of the crime with which he was charged. McVeay v. State, 355 So.2d 1389 (Miss. 1978) and Matula v. State, 220 So.2d 833 (Miss. 1969). In essence, Murrell argues that the State did not carry its burden because no evidence was adduced at trial that Boatner suffered "any bodily injury as a result of the fracas. There was no testimony as to medical treatment, bruises, scars, or red marks." Officer Boatner never testified that he felt pain. As a matter of fact, both officers admitted that if the defendant had wanted to hit Mr. Boatner or hurt Mr. Boatner, nothing would have prevented it.
*884 If the indictment had charged Murrell with attempting to cause injury, we would have no problem. Evidence that he slammed the officer to the ground is sufficient to support such a finding. But neither the indictment nor the instructions spoke to the issue of attempt. We are left to determine whether the evidence was sufficient to support a jury determination that Murrell did, in fact, cause "injury." Griffin v. State, 533 So.2d 444, 447 (Miss. 1988) (Charge must be proven as laid in the indictment); See Gray v. State, 389 So.2d 1384 (Miss. 1980) (an example of a conviction affirmed because "attempt to cause ... injury" was included in the instructions on assault).
The State contends that Robinson v. State, 566 So.2d 1240 (Miss. 1990), should control the outcome of this case. There, Robinson was found guilty of simple assault on a law enforcement officer. At trial, testimony was adduced that he attacked a deputy, who was escorting him to the shower. Robinson claimed that he grabbed the deputy and put him in a "bear hug" in order to protect himself against an unprovoked attack by the deputy. Id. at 1242.
The issue in Robinson, however, was not whether the "bear hug," Robinson's version, or the "attack" and "scuffle," the officers' version, caused "injury," but, rather, whether Robinson was acting in self-defense, not intending injury. We resolved that issue as one for jury determination on conflicting evidence. Id.
A case more pertinent to the facts of this case is Reining v. State, 606 So.2d 1098 (Miss. 1992). In Reining, a simple assault on a police officer occurred when the officer attempted to arrest the defendant at the Bethel Baptist Church ("Bethel Home") in Lucedale, Mississippi. The defendant in that case swung his arms wildly to prevent his capture. It was at that point that the assaults on the police officers occurred. On appeal, Reining argued that Miss. Code Ann. § 97-3-7(1) was unconstitutionally vague because it does not define "bodily injury."
We recognized that "although a statute imposing criminal penalties must be strictly construed in favor of the accused, it should not be so strict as to override common sense or statutory purpose." Id. at 1103, citing United States v. Brown, 333 U.S. 18, 25, 68 S.Ct. 376, 380, 92 L.Ed. 442, 448 (1948). This Court observed that "[a]lthough there are no degrees of bodily injury stated in the statute, a minor injury is a `bodily injury' even though it may not be a traumatic injury." Reining, 606 So.2d at 1103.
At least one of the Reining victims testified, however, that he sustained a sore wrist blocking one of Reining's blows and that the wrist had to be kept wrapped for two weeks.
The definitional portion of our assault statute comes verbatim from the Model Penal Code. Miss. Code Ann. § 97-3-7; Model Penal Code, Section 211.1. The Model Penal Code defines "bodily injury" as "physical pain, illness or any impairment of physical condition." Model Penal Code, Section 210.0(2). If this conviction is to be affirmed, it must be on the basis that there was sufficient evidence for the jury to conclude that the victim suffered "physical pain", as there appears no basis whatever for the conclusion that an illness or impairment resulted.
It appears that there are no Mississippi cases which address the issue of whether a jury can infer that one suffers pain where there is no medical treatment, no wound and no testimony concerning pain. At least one other jurisdiction, which adheres to the Model Penal Code definition of "bodily injury" has discussed the issue.
In George Wawrykow v. State, 866 S.W.2d 87 (Tex. App. 1993), the indictment alleged that the defendant "intentionally, knowingly, and recklessly cause[d] bodily injury to" a police officer when he pushed the police officer in the chest. The defendant argued that the State failed to elicit testimony which showed that the police officer was hurt in any way due to being pushed in the chest by the defendant. The Texas Court of Appeals agreed that the record was void of any direct evidence demonstrating that the police officer was in fact hurt by the defendant's push. The court held, however, that in light of all the direct and circumstantial evidence presented at trial, any rational factfinder could have inferred that the police officer sustained "bodily injury," as alleged in the indictment *885 and the jury's instructions. Id. at 90. The court relied in substantial part upon the fact that there was an unrecorded demonstration of the manner of the push, suggesting that the demonstration aided the jury determination. The court observed that it was incumbent upon the appellant to provide a record in support of any contention that the demonstration was not sufficient for this purpose. Id.
The second case is Tania Wawrykow v. State, 866 S.W 2d 96 (Tex. App. 1993), involving another defendant in the same incident cited above. In this case, the defendant assigned error to the sufficiency of the evidence presented to support a conviction of assault. The indictment charged the defendant with "intentionally, knowingly and recklessly caus[ing] bodily injury" to a police officer "by striking" him "on the head with her fist," and "with intent to hinder the arrest of another, namely: Tania Wawrykow, did provide and aid in providing George Wawrykow with means of avoiding arrest to-wit: by physically choking" the police officer "with her arms." There was no testimony or evidence to the fact that the police officer was actually injured. In determining whether the evidence was sufficient to support the assault conviction, the Texas Court of Appeals stated:
Indeed, juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving affect to the inferences that may reasonably be drawn from the evidence. Citing United States v. Heath, 970 F.2d 1397, 1402 (5th Cir.1992).
The Texas Court of Appeals held that any rational factfinder could have inferred that the blows from appellant's fist to the police officer's head area hurt the officer or caused him physical pain. Wawrykow, 866 S.W.2d at 100.
One judge dissented in the George Wawrykow case and concurred in the Tania Wawrykow cases. He reasoned that a push to the chest does not, while a blow with a closed fist to the head does, give rise to an inference that pain was caused.
This is another issue which could have been avoided by more careful attention to the elements of the crime required to be proven. As we have said in another context, the ease of proof with regard to the element here in question, dictates that we not sanction the failure to do so. Washington v. State, 645 So.2d 915, 918-919 (Miss. 1994) (Prosecution's failure to offer proof of particular element of a crime is usually easy to come by. But if the prosecution does not bring it before the jury, it has not overcome the presumption of innocence). Either the officer suffered pain or he did not and it is a simple task to ask him. Appellate courts need not be put to the task of assessing the circumstantial evidence to support a jury verdict in a case such as this. The circumstantial evidence should be supportive of, not in lieu of, the direct testimony readily at hand. We hold that the evidence concerning Murrell's actions, while sufficient to allow an inference of pain, is so weak in that regard that a new trial is required. Washington, 645 So.2d 915 (Miss. 1994).

III
Murrell argues that resisting arrest is a lesser offense of simple assault and he was entitled to an instruction on resisting arrest because testimony was put forth at trial from which the jury could have inferred that Murrell was merely resisting arrest. Murrell relies on cases in which this Court has dealt with the terms of "lesser included offenses" and "lesser offenses" to support his contention that the trial judge should have granted the resisting arrest instruction.
In Mease v. State, 539 So.2d 1324 (Miss. 1989), we reiterated the guiding principle regarding lesser included offense instructions by quoting Jackson v. State, 337 So.2d 1242 (Miss. 1976), as follows:
[W]hen warranted by the evidence, the trial court may instruct the jury with reference to lesser included offenses. However, such an instruction should not be indiscriminately or automatically given, as was condemned in Roberts v. Louisiana, 428 U.S. 325 at 334, 96 S.Ct. 3001 at 3007, 49 L.Ed.2d 974 at 982 (1976), but should only be given after the trial court has *886 carefully considered the evidence and is of the opinion that such an instruction is justified by the evidence. (337 So.2d at 1255).
539 So.2d at 1329. Emphasis Added
This Court went on to hold that Mease was "of right entitled to have the jury instructed regarding any offense carrying a lesser punishment arising out of a common nucleus of operative fact with the scenario giving rise to the charge laid in the indictment." Id. at 1329.
Murrell also relies on Griffin v. State, 533 So.2d 444 (Miss. 1988). The defendant in Griffin argued that the trial court erred in its refusal to grant a simple assault instruction offered by the defense. Id. at 447. In Griffin, if the jury accepted the female's version of the facts, it could have found Griffin guilty of rape. On the other hand, if the jury accepted Griffin's side of the story, it could have found him guilty of simple assault.
This Court stated that "[a] lesser-included offense instruction should only be granted if there is an evidentiary basis therefor in the record." Id. at 447, citing Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984). The Griffin Court went to state that the test for determining whether there is an evidentiary basis in the record was fleshed out in Harper v. State, 478 So.2d 1017, 1021 (Miss. 1985):
[A] lesser included offense instruction should be granted unless the trial judge  and ultimately this Court  can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).
It is clear from the discussion above that the question of whether the state proved all of the elements of simple assault is a close one. If Murrell did not cause pain, he is not guilty of simple assault. He could still be found guilty of resisting arrest. A reasonable fact-finder could conclude, based on the evidence, that Murrell resisted arrest, but have a reasonable doubt whether he injured the officer within the meaning of the statute. The trial court erred in failing to give the resisting arrest instruction.

IV
Murrell asserts that the court erred in failing to give the following instruction:
The court instructs the Jury that the purported arrest of the defendant in this case was an unlawful arrest. Before you may return a verdict of guilty to any charge in this case, the State must prove beyond a reasonable doubt that the defendant did not use reasonable force to resist an unlawful arrest. If the State has failed to meet this burden of proof you must find the defendant not guilty.
We reach this issue because of the possibility of its recurrence on remand.
In essence, Murrell contends that because he was not given notice and a hearing on the contempt charge, Officers Boatner's and Griffin's attempt to arrest him was unlawful. He points to several cases in which this Court has held that a defendant is entitled to a hearing and an opportunity to be heard where the defendant commits an offense outside of the presence of the court. If Murrell is correct in his contention that the warrant issued for his arrest was unlawful, the question this Court must determine is whether Murrell had the right to resist arrest where the officer was acting under the color of official authority and not using excessive force.
Murrell relies on Wood v. State, 227 So.2d 288 (Miss. 1969). Robert Johnson was found in contempt of court because of disorderly conduct committed in the presence of the court. His attorney, Martha Wood, filed a Bill of Exceptions which was signed by Jon Thames and Robert J. Kelly, two attorneys who were present in court when Johnson was sentenced. After the Bill of Exceptions was filed, Wood presented it to the trial judge in open court, allegedly for the purpose of trying to get the judge to reconsider and sign the Bill of Exceptions. After the trial judge read the Bill of Exceptions he entered an order adjudging appellants in contempt of court. The order detailed the matters which *887 the court considered and stated, among other things:
After reading said petition which was presented by the said Martha M. Wood in open court and considering the within matter, this Court finds and adjudicates as follows:
For the conduct of said attorneys, as aforesaid, and the willful misrepresentation of facts as to what they allege occurred when all three of said attorneys were present in Court, for the disrespectful language to the Court, for the gross lack of fidelity to the Court and their attitude as shown by said instrument, it is ordered and adjudged that each of said parties, Martha M. Wood, Jon Thames, and Robert J. Kelly, are adjudged in criminal contempt and each of them are sentenced to serve a term of sixty days in the County jail and pay a fine of $300.
227 So.2d at 289.
The principal question in Wood, was whether misrepresentations and disrespectful language contained in a Bill of Exceptions constituted direct contempt of court. This Court held that it did not and that the contempt, if any, was constructive contempt. As such, this Court found that the order entered was a nullity and for that reason, the case was reversed and appellants discharged.
It is true that under Wood, Murrell's failure to appear in court at the appointed time constituted constructive contempt. As such, a warrant should not have been issued for Murrell's arrest until he had been given a hearing and an opportunity to be heard.
The question here, then, is whether Murrell had the right to resist the unlawful arrest where the officers were acting in good-faith on an unlawful warrant issued by the city judge. In Boyd v. State, 406 So.2d 824, 826 (Miss. 1981), this Court stated that, "It is fundamental that a person has a right to use reasonable force to resist an unlawful arrest." Quoting 6 Am.Jur.2d Assault and Battery § 79, p. 71-72 (2nd ed. 1963), the Boyd Court stated:
However, not every kind of resistance to an unlawful arrest by an officer qualifies as self-defense justifying an assault or battery against the officer. If an attempted arrest is unlawful, the party sought to be arrested may use reasonable force as is necessary to effect his escape, but no more; he cannot do this by using or offering to use a deadly weapon, if he has no reason to apprehend a greater injury than a mere unlawful arrest.
406 So.2d at 826.
Here, however, there is no "unlawful" arrest in the sense necessary to justify resistance. While the warrant may have been erroneously issued, the law enforcement authorities were engaged in the good faith execution of their duties with respect to the warrant. For all they and Murrell knew, the warrant was valid.
In People v. Hess, 687 P.2d 443 (Colo. 1984), the court held that even if an arrest is unlawful, a defendant has no right to resist where the officer is acting under the color of his official authority and not using excessive force. Colorado's resisting arrest statute is different from Mississippi's. It states in part that, "It is no defense to a prosecution under this section that the peace officer was attempting to make an arrest which in fact was unlawful, if he was acting under the color of his official authority, and in attempting to make the arrest he was not resorting to unreasonable or excessive force giving rise to the right of self-defense." Id. at 446.
Although Colorado's statute states a principle not heretofore recognized in our law, that Court's reasoning is compelling. The Court stated
"In a day when police are armed with lethal and chemical weapons and possess scientific communication and detection devices readily available for use, it has become highly unlikely that a suspect, using reasonable force, can escape from or effectively deter an arrest, whether lawful or unlawful. His accomplishment is generally limited to temporary evasion, merely rendering the officer's task more difficult or prolonged. Thus self-help as a practical remedy is anachronistic, whatever may have been its original justification or efficacy in an area when the common law doctrine permitting resistance evolved ... . . Indeed, self-help not infrequently causes *888 far graver consequences for both the officer and the suspect than does the unlawful arrest itself."
Id. at 446-447.
While we do not abandon the concept of self-help, we too are compelled to recognize that the concept should be limited to those situations where the arrest is in fact illegal and the arrestor and arrestee have reason to know that it is or where the arrest is accompanied by excessive force. There is no right to resist an arrest based upon good faith reliance on a duly issued arrest warrant where the arrestee has no reasonable basis to conclude that the warrant was issued in bad faith.

V
For the foregoing reasons this matter is reversed and remanded to the circuit court for further proceedings.
REVERSED AND REMANDED.
HAWKINS, C.J., and PRATHER, P.J., concur.
DAN M. LEE, P.J., concurs in result only.
SULLIVAN, J., concurs in part and dissents in part with separate written opinion joined by McRAE, J.
PITTMAN, J., dissents with separate written opinion joined by JAMES L. ROBERTS, Jr. and SMITH, JJ.
SULLIVAN, Justice, concurring in part and dissenting in part:
I concur in the holding that the conviction for simple assault should be reversed, but this case should not be remanded for a new trial.
In addition to the burden on a defendant to notify the State that it has failed to meet is burden of proof in order to preserve an insufficiency argument on appeal, a remand under these circumstances has in essence compelled the defendant to point out the defects in the State's case. If the defendant doesn't point out the flaws in the State's case, the majority will simply explain the mistakes to the State on appeal and permit them to give it another shot. Washington v. State, 645 So.2d 915, 921 (Miss. 1994) (Sullivan, J., dissenting).
The holding which characterizes the evidence as "sufficient to allow an inference of pain", yet "so weak in that regard that a new trial is required", is paradoxical. The defendant argues on appeal that the evidence was insufficient, and the cases on which the majority relied in reversing the trial court were rendered in the context of sufficiency arguments. The majority essentially concluded that the State did not satisfy its burden to provide sufficient evidence of the element "bodily injury" regardless of the standard under which the majority says it traveled. Once the reviewing court has determined that the State has failed to meet its burden of presenting legally sufficient evidence, the Double Jeopardy Clause precludes a second trial. Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150-51, 57 L.Ed.2d 1 (1978); Isaac v. State, 645 So.2d 903, 910 (Miss. 1994); Griffin v. State, 584 So.2d 1274, 1276 (Miss. 1991). Consequently, the interests of justice require that this case be reversed and rendered.
It is not necessary to address the issue concerning the lesser included offense of resisting arrest since the State failed to meet its burden to present a legally sufficient amount of evidence to convict the Defendant. We should wait for a day when this issue is squarely before this Court and fully briefed before rewriting the law on resisting unlawful arrest.
McRAE, J., joins this opinion.
PITTMAN, Justice, dissenting:
I respectfully dissent to the majority opinion as written by Justice Banks. Taking all the facts as presented by the majority opinion as true, I am not convinced that a reversal and remand is appropriate in the case sub judice.
The majority opinion suggests that there are four main contentions on appeal.

I. WAS THE INDICTMENT SUFFICIENT TO PUT MURRELL ON NOTICE?
I would agree with the majority that the indictment was sufficient to put the Defendant on notice.

*889 II. IS IT NECESSARY THAT THE LAW ENFORCEMENT OFFICER TESTIFY TO PHYSICAL PAIN IN ORDER TO MEET REQUIREMENTS OF "BODILY INJURY?"

The majority opinion presents Murrell's argument to the effect that the State did not carry its burden of proof because no evidence was adduced at trial that Boatner suffered "any bodily injury as a result of the fracas." This contention seems to argue that the State must present some evidence that an officer who is attacked while attempting to make an arrest (1) was injured and the extent of the injury or (2) that the victim must testify that he received a scratch or a bruise. The majority offers that the State fatally failed in its proof by not eliciting from the officer any testimony of "physical pain."
I do not agree that direct physical pain testimony is necessary nor that the testimony in the case sub judice is fatally deficient. It should be recognized Miss. Code Ann. § 97-3-7(1) (1972) has the purpose of affording a safeguard for officers in the proper discharge and performance of their official duties. This safeguard is even more important in light of the fact that law enforcement officers face increasing dangers on the streets. The focus of this case should be upon the intent of the Defendant Murrell to commit the acts which the State charges violated the simple assault statute. I believe that the majority is misguided in their opinion by placing emphasis on whether Officer Boatner felt any "physical pain." This emphasis is misguided for two central reasons. One, the elements of the simple assault statute do not include a reference to the extent of bodily injury incurred by an officer. Intent is the central element as the statute allows for prosecution of a person who attempts to cause bodily injury. Miss. Code Ann. § 97-3-7(1) (1972). In Payton v. State, 642 So.2d 1328, 1335 (Miss. 1994), this Court considered whether a mother who fed her baby glass could have intended anything other than to cause serious bodily harm to the child. This Court held, "Under these facts, no reasonable juror could find the glass slivers were not used in `such a manner as to cause serious bodily harm.'" Similarly, I believe that no reasonable jury could find that Murrell lacked the intent to cause bodily injury.
Secondly, the jury had the right to infer that the officer did feel pain when Murrell was throwing him to the ground and choking him. This Court has held in Pryor v. State, 349 So.2d 1063 (Miss. 1977), that a jury, as fact finder, is entitled to consider not only facts testified to by witnesses but all inferences that may be reasonably and logically deduced from the facts in evidence. We held in Campbell v. State, 278 So.2d 420 (Miss. 1973), that all proof need not be direct and the jury may draw any reasonable inferences from all evidence in a case. The majority submits that the testimony allowed an inference of pain, but that the inference was so weak that it necessitates a new trial. (Majority op. at 885). The majority offers the definition of "bodily injury" as used in the Model Penal Code Section 210.0(3) which reads, "physical pain, illness or any impairment of physical condition." The majority opinion suggests that the conviction would be affirmable if there was sufficient evidence for the jury to conclude that the victim suffered "physical pain." Such evidence not only exists, it is unrefuted.[1] In Reining v. State, 606 So.2d 1098, 1103 (Miss. 1992), we state, "Although there are no degrees of bodily injury stated in the statute, a minor injury is a `bodily injury' even though it may not be a traumatic injury." Certainly, being thrown to the ground and strangled did not feel good. On appeal, we are to defer greatly to the jury's verdict. At trial, the jury found sufficient testimony regarding bodily injury in order to convict Murrell.[2] Therefore, I *890 suggest that sufficient evidence was presented to the jury in order for the jury to infer bodily harm occurred.
Curiously, the majority opinion seems to agree with this very point by citing two cases from Texas which held that "in light of all the direct and circumstantial evidence presented at trial, [a] rational factfinder could have inferred that the police officer sustained `bodily injury,' as alleged in the indictment and the jury's instruction." Majority op. at 884-85. (citing Wawrykow v. Texas, 866 S.W.2d 96 (Tex. Ct. App. 1993) and Wawrykow v. Texas, 866 S.W.2d 87 (Tex. Ct. App. 1993)). Furthermore, the majority cites with apparent approval the Texas Court of Appeals for the position that:
Indeed, juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving affect to the inferences that may reasonably be drawn from the evidence.
Wawrykow v. Texas, 866 S.W.2d 96 (Tex. Ct. App. 1993) (citing United States v. Heath, 970 F.2d 1397, 1402 (5th Cir.1992)).
The majority opinion admonishes the district attorneys to pay more attention to proof of the elements of the crime, and we can all agree that this issue raised on appeal could have been avoided if the proper questions were asked and answered in regards to pain and injury. All too often appellate courts are asked to assess whether circumstantial evidence supports a jury verdict in a case. In the case sub judice, it was within the jury's province to take the direct testimony and circumstantial evidence and determine that the officer had been "bodily harmed" as charged under the indictment. They found that bodily harm did occur. We should not disturb this finding as the testimony and evidence concerning Murrell's actions was sufficient in this case to allow an inference of pain. Therefore, I would find that the issue is without merit.

III. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY NOT ALLOWING THE LESSER INCLUDED OFFENSE?
The trial court properly denied the request for a lesser-included offense instruction.
In order for Murrell to have a right to a lesser-included offense instruction, one must first determine that resisting arrest is a lesser-included offense of the greater crime of simple assault upon a law enforcement officer while performing his duties. At first glance, it would seem that this type of assault encompasses the misdemeanor crime of resisting or obstructing arrest.
The resisting arrest statute, Miss. Code Ann. § 97-9-73 (1994), reads:
It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or any other manner, his lawful arrest or the lawful arrest of another person by any state, local or federal law enforcement officer... .
(emphasis added).
In comparison, the simple assault section of Miss. Code Ann. § 97-3-7(1) (1972) reads:
A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly, or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm.
Simple assault upon a law enforcement officer does not encompass the misdemeanor crime of resisting arrest. The Court recently addressed the issue of lesser-included offenses in Payton v. State, 642 So.2d 1328, 1334 (Miss. 1994). In Payton, the defendant similarly claimed a right to a lesser-included offense instruction on the misdemeanor crime of child neglect where the defendant was charged with felonious child abuse. In defining "lesser-included" offenses, the Court stated:

*891 A lesser included offense by definition is one in which all its essential ingredients are contained in the offense for which the accused is indicted, but not all of the essential ingredients of the indicted offense. An accused could not be guilty of the offense for which he is indicted without at the same time being guilty of the lesser include offense. The lesser included crime is encompassed within the crime for which the accused is indicted.
Id. (citing Harper v. State, 478 So.2d 1017, 1021 (Miss. 1985) (emphasis added). The Payton court found that
[The child neglect] instruction was refused by the trial court and correctly so. The crime of misdemeanor child neglect is not encompassed within the definition of the more serious crime of felonious child abuse. In other words, if the State proved the elements of felonious child abuse, it would not follow a fortiori that all the elements of child neglect were also proven.
(emphasis added). In accord with the language and holding in Payton, Murrell was not entitled to a lesser-included instruction as to resisting arrest. It is entirely possible for one to be convicted of simple assault upon a law enforcement officer and resisting arrest. See Reining v. State, 606 So.2d 1098 (Miss. 1992) (affirming conviction for both resisting arrest and simple assault arising out of same incident). Additionally, it is conceivable that a person could resist arrest by nonviolent methods in violation of Miss. Code Ann. § 99-9-73 and still not have committed a simple assault upon a law enforcement officer in violation of Miss. Code Ann. § 97-3-7(1). One need look only at any number of cases where the defendant resisted arrest by refusing to move or cooperate with the arresting officer. On the other hand, it is conceivable that a police officer could be assaulted at a time when he was not attempting to arrest a person. For these reasons, the trial court did not err in failing to grant the lesser-included offense instruction.

IV. DID THE OFFICER LAWFULLY ARREST MURRELL OR MORE IMPORTANTLY DID MURRELL HAVE A RIGHT TO RESIST AN UNLAWFUL ARREST?
The facts as found by the trial court are as follow. Murrell was arrested and appeared before the lower court on the charges of malicious mischief. On the day set for trial, the Defendant appeared and requested an attorney. The trial court granted Murrell time in order for Murrell to retain an attorney and orally ordered Murrell to be back in court in two weeks. Murrell failed to appear two weeks later and a warrant was issued for Murrell to appear on the charge of contempt of court of a direct order.
Murrell contends that because he was not given notice and a hearing on the contempt charge, Officers Boatner and Griffin were attempting to make an unlawful arrest. The lower court found that the Defendant's failure to appear violated an order of the municipal judge. The lower court characterized the contumacious actions of the Defendant as "direct contempt" which could be handled by summary judgment.
It appears that the acts of the Defendant amounted to direct contempt because Murrell was in violation of a court order. To hold otherwise would encroach upon the court's inherent authority to hold a person in contempt of court for violation of court orders. This is distinguishable from instances where a party or attorney merely fails to appear which is generally held to be constructive contempt. When a party merely fails to appear, the court must consider outside information which is not apparent simply from the party's absence in order to determine if the failure was "calculated to impede." Murrell was in direct contempt of an oral order, and the lower court had the authority to issue a warrant "to pick him up." Unfortunately, the oral order does not appear in the record.[3]
*892 Contrary to the findings of the lower court, the majority asserts that the Defendant was in "constructive contempt" rather than "direct contempt" and agrees with the Defendant that Murrell was deprived of notice and a hearing.
It seems somewhat irrelevant which characterization this Court chooses. If the Court finds that the arrest warrant was flawed because it was based upon an erroneous finding that the Defendant was in direct contempt, then neither the Defendant nor the Officer Boatner would have been aware of this flaw. Nevertheless, this Court has held that a person may reasonably resist an unlawful arrest. Watkins v. State, 350 So.2d 1384, 1386 (Miss. 1977); see also Boyd v. State, 406 So.2d 824 (Miss. 1981) (recognizing right to reasonably resist unlawful arrest). In Watkins, the Court set forth the variables by which to measure the limited right to resist arrest:
(1) The nature and location of the premises where the attempted arrest occurred;
(2) Inquiry as to whether the arrest was made with apparent legal authority as opposed to no claim of authority.
(3) The potential for violence and physical harm under the circumstances of the particular confrontation;
(4) Whether the force used in resistance was reasonable considering the above factors.
Id. In the case sub judice, the arrest was made by uniformed officers in a clearly marked car who bore apparent legal authority. In fact, Murrell did not resist the arrest until the officers attempted to place handcuffs on him. Then, Murrell proceeded by all accounts to throw Officer Boatner to the ground and choke him. The record does not show that any unreasonable force or means were used by the officers. Even if Murrell's contention that he was unlawfully arrested is meritorious, Murrell exceeded the bounds of reasonable resistance. Smith v. State, 208 So.2d 746 (Miss. 1968).
Murrell's rights to resist an unlawful arrest require that he use only reasonable force. Because Murrell exceeded his rights, he cannot rely upon his defense of unlawful arrest. Moreover, "there would have been available to him the legal process of the courts for vindicating his illegal arrest if indeed it was such." Watkins, 350 So.2d at 1387. Therefore, the assigned error is without merit.
In accordance with the before discussion of issues raised, I would affirm.
JAMES L. ROBERTS, Jr. and SMITH, JJ., join this opinion.
NOTES
[1] While the assistant district attorney may not have elicited the exact information that would satisfy the majority or that the majority would have elicited, the Defendant did not argue a lack of such testimony in his defense.
[2] This case is distinguished from Washington v. State, 645 So.2d 915 (Miss. 1994), wherein the State failed to prove the age of a victim of sexual battery. The lower court found that the jury could determine the age of the victim through common knowledge and observations of the child. In reversing, this Court impliedly held that it is beyond a jury's common knowledge to determine the age of a victim by mere observation. The Court stated that the evidence in the record was "so small that the verdict [was] contrary to law or the weight of the evidence."

Although it was improper in the Washington case, it is proper for the jury to apply common knowledge to the issue of bodily harm where the record reflects sufficient direct testimony and evidence that the officer was bodily harmed.
[3] Generally, there are two types of contempt  direct and constructive. In Varvaris v. State, the Court defined "direct contempt" as "words spoken or acts done in the presence of the court which tend to embarrass or prevent orderly administration of justice." Varvaris v. State, 512 So.2d 886, 887 (Miss. 1987) (citing Jordan v. State, 216 Miss. 542, 62 So.2d 886 (1953)). A "direct criminal contempt" is defined as "one which takes place in the very presence of the judge making all the elements of the offense personal knowledge... . Where the acts of contempt take place in the presence of the court, no evidence or proof other than court's own knowledge is required." Varvaris, 512 So.2d at 887-8.

On the other hand, "constructive criminal contempt" is conduct which is "calculated to impede or embarrass, obstruct, defeat, or corrupt administration of courts of justice when the act is done beyond the presence of the court." Lawson v. State, 573 So.2d 684, 686 (Miss. 1990) (affirming contempt conviction of attorney who communicated with jurors post-verdict in violation of court order to contrary).