# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KM-01089-SCT

*IN RE: LINDA A. HAMPTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/3/2004 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED – 01/05/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     An attorney for the defendant in a civil case failed to show up for a hearing in the matter and  was later found in criminal contempt of court for failing to appear in the Circuit Court of Winston County.   She now appeals to this Court and raises several issues regarding the contempt conviction and sentence imposed by the circuit court.   Finding no reversible error by the learned trial judge, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     This case had its genesis in *Flake v. Coburn*, 2003-AP-02602, an election contest where attorney Linda A. Hampton was counsel of record for the defendant.   Before *Flake* proceeded to trial, Hampton filed a petition for writ of prohibition with this Court alleging that

the circuit court no longer retained jurisdiction in the election matter. This Court entered an order denying Hampton's petition, finding jurisdiction was proper in the Circuit Court of Winston County. Hampton subsequently filed a motion for reconsideration of this Court's order which determined jurisdiction was proper in the circuit court. The trial judge expressed concern as to whether or not jurisdiction was proper in the circuit court and asked this Court for a clarification of jurisdiction. This Court then issued an additional order reconfirming the denial of Hampton's petition for writ of prohibition and explicitly recognized that jurisdiction was proper in the circuit court.

¶3. After this Court determined that jurisdiction was proper, the circuit judge issued a letter to each attorney, informing them of what was to be expected at the election hearing scheduled for August 27, 2004. After the circuit court secured a court reporter, the circuit court sent an additional letter to each attorney. The second letter requested the presence of both attorneys at the courthouse on August 27 at 8:30 a.m. for a planning conference. On August 27 at 9:06 a.m. the trial judge, attorney for the plaintiff, and the clerk of the circuit court were present in the judge's chambers; however, attorney Hampton was not present at the conference, nor had anyone heard from her.

¶4. While on the record, the judge telephoned and left messages with Hampton's law office, on Hampton's cell phone and at Hampton's residence. In addition, a circuit court clerk employee was sent to a funeral home owned by Hampton's husband. None of these attempts led to communication with Hampton or knowledge of her whereabouts. Further, the Winston County Circuit Clerk, Kim Ming, revealed that she spoke with Hampton during the two weeks

2

preceding the meeting, and Hampton informed the circuit clerk that she may or may not attend the planning conference scheduled for August 27. The judge determined that a recess was appropriate until all efforts to contact Hampton were exhausted. When the judge reconvened the conference, Hampton was still unaccounted for and never made an appearance.

¶5. The circuit court entered an order continuing all proceedings until September 3, 2004. The order also provided notice that Hampton's absence from the planning conference would require explanation at that time. The order commanded both attorneys to appear "without fail at the appointed time" on September 3. In addition, both Hampton and her client were subpoenaed to appear at the September 3 hearing. Hampton subsequently filed a motion to quash the subpoenas issued by the circuit court. The judge denied the motion and once again commanded Hampton to appear at the hearing.

¶6. On September 3, Hampton appeared in the Circuit Court of Winston County as ordered. At the outset of the hearing, the judge proceeded with the possible contempt issue regarding Hampton's absence from the prior hearing. Hampton then expressly stated she was ready to proceed on the contempt issue, and the judge gave a brief recitation of the law regarding contempt. With the permission of the court, Hampton read aloud a prepared statement to address her absence. First, Hampton revealed her displeasure with the initial setting of the election case on Confederate Memorial Day in April of 2004. Moreover, Hampton recounted the inconvenience of her arriving at the courthouse and discovering that it was closed for a holiday. Hampton submitted that her client was under no obligation to appear because the circuit court did not have jurisdiction. Hampton opined that her client did not authorize her

3

to appear on his behalf, and she had no authorization to do so. Hampton informed the court that she was unable to develop further testimony on this claim citing the attorney-client privilege as a defense. Finally, Hampton claimed that the circuit court's order requiring her presence was unclear.

¶7. After Hampton completed the reading of her statement, the court conducted a brief examination of Hampton. Once the court's examination of Hampton was complete, Hampton was allowed to present witnesses on her behalf. Both of Hampton's witnesses testified that Hampton was present at the courthouse and in anticipation of a hearing on April 26. Further, both witnesses testified the courthouse was closed on April 26, in observance of Confederate Memorial Day.

¶8. Counsel for the plaintiff was permitted to call the Winston County Circuit Clerk as a witness. The clerk testified that the courthouse was closed for Confederate Memorial Day and notices of the court's closure were conspicuously posted in advance of the weekend.

¶9. The judge then gave a particular chronology of the events that transpired in the case from August 5, 2004, up until that point. Next, the judge called the clerk of court back to the stand and conducted his own examination. The clerk testified that orders and letters issued by the judge were faxed and mailed to counsel for both parties. During her testimony, the clerk also recounted her conversation with Hampton, where Hampton stated that she "may or may not" be at the August 27 hearing. The judge then allowed Hampton the opportunity to cross-examine the clerk.

4

¶10. The judge further allowed Hampton an opportunity to develop any further reasons and witnesses regarding the contempt issue. Hampton asserted that the summons issued was a summons under Rule 81 of the M.R.C.P. whereby her client could appear, defend, or receive a default judgment; contrary to a rule 4 summons. Thus, Hampton claims she informed her client based on the directives of the summons and failed to attend the hearing in accordance with her client's wishes.

¶11. Hampton called her husband, the owner of the funeral home, to testify at the contempt hearing. Hampton's husband testified that due to the emotional strain of a relative's funeral, Hampton did not attend the hearing on August 27.

¶12. Finally, the judge delivered his ruling on the issue of Hampton's contempt. The judge concluded Hampton was aware that her attendance on August 27 was mandatory. Further, the judge determined that Hampton's failure to attend the hearing was willful, deliberate and contumacious. Thus, the judge found Hampton in direct criminal contempt of court. Hampton was subsequently fined $100 for her actions and sentenced her to serve a term of three days in the Winston County Jail. Furthermore, the judge imposed sanctions against Hampton for counsel opposite's time, the court reporter's fee, and court costs.

## DISCUSSION

### I. NOTICE

¶13. "This Court is not bound by the manifest error rule when the appeal involves a conviction of criminal contempt. Instead, this Court proceeds *ab initio* to determine whether

the record proves the appellant guilty of contempt beyond a reasonable doubt." *Purvis v. Purvis*, 657 So. 2d 794, 797 (Miss. 1994). "The burden of proof to establish that contempt has been committed is on the party asserting that it has. In a proceeding for criminal contempt, evidence of guilt must be established beyond a reasonable doubt." *Brame v. State*, 755 So. 2d 1090, 1093 (Miss. 2000) (citing *In re Holmes*, 355 So. 2d 677, 679 (Miss. 1978)).

¶14.     Hampton contends she was deprived of the right to be informed of the nature and accusations charged against her; specifically neither the circuit court's subpoena nor the order served upon her gave notice of the contempt charge. Hampton also argues, that the circuit court's failure to provide notice, denied her the opportunity to obtain witnesses on her behalf and to retain assistance of counsel for her defense at the contempt proceeding.

¶15.     First, in considering Hampton's appeal, it is necessary to determine whether civil or criminal contempt is at hand in this case. This Court has previously held:

> If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil. The contemnor may be jailed or fined for civil contempt; however, the contemnor must be relieved of the penalty when he performs the required act.

*Cooper Tire & Rubber Co. v. McGill*, 890 So. 2d 859, 868 (Miss. 2004) (citing *Purvis v. Purvis*, 657 So. 2d at 796-97). Hence, civil contempt is a compulsory measure used by courts.

¶16.     "Criminal contempt penalties, on the other hand, are designed to punish the contemnor for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with the court order." *McGill*, 890 So. 2d at 868 (citing *Common Cause of Miss. v. Smith*, 548 So. 2d 412, 415-16 (Miss. 1989)). The circuit court imposed the contempt

6

charge on Hampton as punishment for failing to attend the hearing at issue. Thus, $100 fine and three day jail sentence was a punishment asserted by the court in the case at bar. As such, the penalty constitutes criminal, not civil, contempt.

¶17. Second, it is necessary to determine whether criminal contempt is direct or constructive. This Court has previously held that:

> Direct contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed . . . .
> Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court . . . In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards including a specification of charges, notice, and a hearing.

*In re Williamson*, 838 So. 2d 226, 237-38 (Miss. 2002) (citing *Moulds v. Bradley*, 791 So. 2d 220, 224-25 (Miss. 2001).

¶18. This Court generally applies the rule that a party's failure to appear in court at the appointed time constitutes constructive contempt. *Wyssbrod v. Wittjen*, 798 So. 2d 352 (Miss. 2001); *Murrell v. State*, 655 So. 2d 881, 887 (Miss. 1995); *Wolf v. State*, 260 So. 2d 425, 433 (Miss. 1972). Thus, under the general rule Hampton's failure to avail herself before the court on August 27 appears to represent an instance of constructive criminal contempt.

¶19. However, this rule is not without exception. In *Wyssbrod*, an attorney contacted the court administrator and informed the court that he would not be present for the hearing as ordered by the court. 798 So. 2d at 361. This Court distinguished the attorney's conduct in

7

*Wyssbrod* "from instances where an attorney merely fails to appear, which is generally held to be constructive contempt." *Id*. Hence, the attorney's actions in *Wyssbrod* were classified as direct criminal contempt, rather than constructive criminal contempt.

¶20. Similarly, here Hampton spoke with the Winston County Circuit Clerk, regarding her appearance at the hearing set for August 27. During the conversation Hampton informed the clerk of court that "off the record, that she may or may not be there." Hampton also told that clerk "she would probably be [t]here, but she was not sure yet." This communication clearly indicates Hampton was aware of her obligation to attend the hearing. Further, this communication demonstrates Hampton's intention to absent herself from the hearing.

¶21. After a thorough review of the record, we find that this instance is also distinguishable from instances where an attorney merely fails to appear, and Hampton's actions classified as direct criminal contempt. Thus, to be classified as an act of direct criminal contempt under the *Wyssbrod* exception, criminal contempt cases should be analyzed on a case by case basis to determine if the attorney's actions constituted something more that merely failing to appear. *Id*.

¶22. Since Hampton's failure to attend the hearing was an act of direct criminal contempt, "[t]he direct contemnor may be summarily punished because no evidence other than the court's own knowledge is required as the conduct was committed in the presence of the court." *Purvis*, 657 So. 2d at 797 (citing *Lamar v. State*, 607 So. 2d 129, 130 (Miss. 1992)).

8

Therefore, Hampton was not entitled to notice nor was she entitled to a hearing on the contempt matter.

¶23. Nevertheless, the circuit court issued an order commanding Hampton to appear on September 3 in order to explain her absence. The circuit court did in fact provide Hampton with notice and an opportunity to show cause as to why she was absent from the August 27 hearing. At the September 3 show cause hearing the judge asked Hampton if she was ready on the contempt issue, Hampton replied "Yes, I am."[1] Hampton was then allowed several opportunities to present a reasonable excuse for her absence from the hearing a week prior. Hampton was also permitted to call and examine a number of witnesses to demonstrate her absence was for good cause. At the conclusion of the show cause hearing, the circuit court stated:

> I have sought to have a full and complete hearing on this matter. I have allowed you to call witnesses, the court has called witnesses, and you've had a right to full-boar [sic] cross-examination, and I have attempted to apply all of the facts, and applicable law here today. And the court finds, Ms. Hampton, that you are in direct criminal contempt of the court for your willful, deliberate non-

---

[1] Hampton disputes the authenticity of the record and claims that "many of the actual statements in court have been deleted or altered in the transcript of the proceedings." However this Court's review is limited to what appears in the record. *Pulphus v. State*, 782 So. 2d 1220, 1224 (Miss. 2001). "We have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions." *Mason v. State*, 440 So. 2d 318, 319 (Miss. 1983). Further, "[f]acts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them." *Id*. at 319; *Phillips v. State*, 421 So. 2d 476 (Miss. 1982); *Branch v. State*, 347 So. 2d 957 (Miss. 1977); *Robinson v. State*, 345 So. 2d 1044 (Miss. 1977); *Shelton v. Kindred*, 279 So. 2d 642 (Miss. 1973); *Alexander v. Hancock*, 174 Miss. 482, 164 So. 772 (1935).

appearance before the court on last Friday at 9:00 o'clock, while the court was sitting, while the court was in session.

¶24. Therefore, contrary to Hampton's contentions, the circuit court provided Hampton with adequate notice of the subsequent contempt hearing on September 3. While neither notice nor a hearing was required in this matter, the circuit court provided Hampton with ample notice, the opportunity to call witnesses (which she did), a week to retain counsel, a fair hearing to determine whether her absence was for good cause, and a number of opportunities to explain her failure to attend the August 27 hearing. Thus, this issue is without merit.

## II. CIRCUIT JUDGE'S ROLE

¶25. Hampton maintains the circuit court judge should not have acted as the trier of fact in the case at bar. However, as previously determined, this case involves acts of direct criminal contempt, and "[t]his Court has held that direct criminal contempt may be handled by the sitting judge instantly." *Terry v. State*, 718 So. 2d 1097, 1104 (Miss. 1998). Therefore, it was proper for the judge to summarily punish Hampton after determining that her absence was willful and not for good cause. Thus, this issue is without merit

¶26. Additionally, Hampton did not object to the circuit judge hearing the contempt charge, and further she did not move for his recusal in this matter. This Court has consistently held that failing to object to a trial judge's appearance in a case will result in a waiver. *Tubwell v. Grant*, 760 So. 2d 687, 689 (Miss. 2000). Hence, Hampton's failure to object results in a waiver.

## III. CIRCUIT JUDGE'S IMPARTIALITY

10

¶27.    Hampton alleges that the circuit court judge was partial, biased, and engaged in ex parte communications with counsel opposite.    However, as previously mentioned, Hampton did not object to the judge hearing the contempt matter, nor did she move for the judge to recuse himself.    Therefore, Hampton's failure to object to the circuit judge's appearance in this case results in a waiver of this argument.    *Id*. Thus, this issue is without merit.    Nonetheless, we will consider Hampton's claims of partiality, bias, and ex parte communications.

¶28.    First, Hampton argues that she was denied an impartial tribunal and trier of fact when the judge announced that he "had contempt" for her.    However, there is no evidence present in the record that the judge ever stated he "had contempt" for Hampton.[2]    The judge actually stated that he "felt contempt for [Hampton's] non-appearance."    This comment differs significantly from Hampton's contention.    Hampton's decision to absent herself from the hearing caused a great inconvenience to several individuals.    Moreover, it would be hard to find anyone who was inconvenienced by Hampton's absence, who did not feel contempt for her actions.    In any case, feeling contempt for Hampton's actions is very much different from feeling contempt for Hampton as a person.    Hence, there is no evidence that Hampton was denied the right to an impartial tribunal.

¶29.    Next, Hampton insists that the judge should have held counsel opposite in contempt, and failure to do so demonstrates the judge's bias.    The judge determined that there was no

---

[2]Once again Hampton attributes such a statement to an altered transcript.  However, as previously alluded to "[c]ases cited establish that our consideration of a case on appeal will be confined strictly to the record, both in terms of facts occurring prior to trial and to facts occurring since trial." *Phillips*, 421 So. 2d at 478.

proof that counsel opposite was in contempt of court. Further, unlike Hampton, counsel opposite was present at both the August 27 and September 3 hearings, in accordance with the circuit court's orders. Therefore, after a detailed review of the record, we agree with the ruling of the circuit court judge. Thus, we conclude that the judge's actions were not biased.

¶30. Finally, Hampton argues the judge made several improper ex parte communications in the case at bar. After a diligent review of the record, we fail to find any evidence of improper contact in the case at bar. We also note that counsel opposite and the circuit court judge were in contact outside the presence of Hampton; however, this contact occurred on August 27 due to Hampton's absence from the hearing. Hence, improper communications did not take place.

¶31. Therefore, the circuit court judge was impartial, unbiased, and did not engage in any improper ex parte contact. Thus, this issue is without merit.

## IV. FINE AND SANCTIONS

¶32. Hampton maintains the circuit court judge imposed excessive fines, by ordering her to pay attorney fees, witness fees, and court reporter fees. Nonetheless, Hampton failed to object to the fine and the sanctions imposed upon her by the judge. Before an issue may be assigned and argued in this Court, it must first be presented to the trial court. *Read v. State*, 430 So. 2d 832, 838 (Miss. 1983). Hampton failed to object and argue this issue in the circuit court. Thus, this issue is procedurally barred. *Id*. Nevertheless, we will consider this issue on the merits.

¶33. The circuit court judge imposed Hampton's punishment in accordance with the appropriate statute. Miss. Code Ann. § 9-1-17 (Rev. 2002). The judge decreed "that

12

[Hampton] pay a fine of $100.00, as allowed, as authorized by statute, and that [Hampton] serve a term of three days in the Winston County Jail." The pertinent part of § 9-1-17 requires that "the fine shall not exceed One Hundred Dollars ($100.00) for each offense, nor shall the imprisonment continue longer than thirty (30) days." Therefore, the punishment levied against Hampton was within the confines of the applicable statute.

¶34. Hampton, asserts she should not have been ordered to pay attorney fees, witness fees and court reporter fees. Moreover, Hampton advances that her fine should have been limited to the statutory limit of $100.

¶35. Hampton was fined within the statutory limits when the judge imposed the punitive $100 fine due to her absence. After the judge reported what Hampton's punishment would entail, he subsequently bifurcated the hearing and then entertained testimony regarding sanctions on account of the harm Hampton's absence caused. Additionally, the judge noted on the record that the statute does not specifically state whether the court can deal with contempt and sanctions together.

¶36. Nevertheless, this Court has held that "[a]n award of attorney's fees in a contempt case is proper." *Newell v. Hinton*, 556 So. 2d 1037, 1043 (Miss. 1990) (citing *Stauffer v. Stauffer*, 379 So. 2d 922, 924 (Miss. 1980)). "[T]he award of fees is largely entrusted to the sound discretion of the chancellor." *Newell*, 556 So. 2d at 1043 (citing *Cheatham v. Cheatham*, 537 So. 2d 435, 440 (Miss. 1988)).

13

¶37. The circuit court expressly decreed that Hampton's actions were willful, deliberate and contumacious. Thus, the judge's award of fees in this matter was certainly proper as *Moses v. Moses*, 879 So. 2d 1036, 1041 (Miss. 2004), states "[i]n order to award attorney's fees in a contempt matter, the trial court must first consider if there was a willful violation of the court's order."

¶38. The judge astutely bifurcated the hearing and considered sanctions subsequent to his ruling in the contempt hearing. Hence, the fine and sanctions ordered by the judge were proper. This issue is without merit.

### V. PROCEDURE

¶39. Hampton claims the circuit court erroneously violated her due process rights when the court found her in contempt rather than simply dismissing her motion for summary judgment. Hampton relies on this Court's decision in *Sanford v. Jackson Mall Shopping Ctr. Co.*, 516 So. 2d 227 (Miss. 1987). Hampton alleges that *Sanford* creates a procedure where an attorney failing to attend a hearing involving his or her own motion for summary judgment merely results in a dismissal of the motion. We find that Hampton incorrectly interpreted this Court's holding in *Sanford*. The relevant issue in *Sanford* deals predominantly with the procedure for granting motions for summary judgment, and its relationship with genuine issues of material fact. *Id*. at 230. This Court expressly stated in *Sanford*, "[w]e do not address the issue as to whether or not dismissal is a proper sanction for failure to appear at a hearing on a motion for

14

summary judgment." *Id*. This Court notes *Sanford* is the lone authority Hampton relies upon under this issue.

¶40. Hampton's misinterpretation of *Sanford* caused her to incorrectly conclude that her failure to attend a hearing she was required to attend would merely result in dismissal of her motion for summary judgment. Hampton's options to cancel or delay the hearing on August 27 were many. For example, Hampton could have filed either a motion to dismiss or she could have filed a motion to continue the motion for summary judgment. At the very least, Hampton could have contacted the circuit court on the day of the hearing. However, Hampton chose to completely disappear on August 27. This was not the judgment and decision of seasoned attorney with fifteen plus years experience.

¶41. Hampton's due process rights were preserved, as the circuit court judge afforded Hampton the notice and a meaningful opportunity to be heard before finding her in contempt. Therefore, the circuit court judge appropriately found Hampton in contempt of court due to Hampton's misinterpretation of *Sanford* on this issue. Thus, this issue is without merit.

## VI. SEIZURE WITHOUT PROBABLE CAUSE

¶42. Hampton claims she was deprived of her right to be secure in her person against unreasonable seizures without probable cause when the circuit court prosecuted, convicted, fined and sentenced her to jail without probable cause. Additionally, Hampton contends the circuit court failed to issue an order demanding her to appear at the August 27 hearing.

¶43. As the State correctly points out, Hampton was never arrested nor searched, thus Hampton's contentions of an unreasonable seizure under the Fourth Amendment are without merit. Furthermore, Hampton failed to present this claim in the circuit court; therefore, it is procedurally barred and deemed waived. *Read*, 430 So. 2d at 838. Nevertheless, we will address the merits of this issue.

¶44. The circuit court issued two separate orders pertinent to the issue at hand. First, an order was issued on August 9, 2004, to set a time and place for hearing all motions. In this order the circuit judge designated three possible dates for the hearing, one of those three dates was August 27, 2004.

¶45. Next, the circuit judge entered a subsequent order on August 13, 2004, which expressly confirmed that the hearing to dispose of all motions and to dispose of all other relevant matters was set for August 27, 2004. Further, to clear up any confusion, the circuit judge sent a letter to both attorneys on August 23, 2004. This letter requested the presence of both attorneys on the morning of August 27.

¶46. Although the orders did not contain the distinct language "Hampton is commanded to appear" the fact remains that attorneys for both parties must attend a hearing ordered by a court. This Court adopts the State's view that an order setting a time, date, and place for a hearing in a cause is of itself notice to the attorneys to appear. An attorney may not pick and choose which court orders to obey. In the case at bar, Hampton's counsel opposite was present and accounted for on the morning of August 27. However, Hampton could not be located.

16

Moreover, Hampton did not present a reasonable explanation for her absence. Thus, Hampton should have attended the August 27 hearing in accordance with the circuit court's orders.

¶47. Hampton also seeks relief under the doctrine of clean hands. However, "[t]he clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue." *Bailey v. Bailey*, 724 So. 2d 335, 337 (Miss. 1998) (citing *Calcote v. Calcote*, 583 So. 2d 197, 199-200 (Miss. 1991)). Because Hampton's absence was an act of wilful misconduct, the clean hands doctrine does not apply. Thus, this issue is without merit.

## VII. FINDINGS AND EVIDENCE

¶48. Hampton argues the circuit judge failed to set out material facts of her contempt of court in his judgment of conviction. Additionally, she avers the evidence submitted at the contempt hearing was insufficient to sustain a conviction of criminal contempt.

¶49. Hampton relies on *Ex parte Redmond*, 156 Miss. 582, 126 So. 485, 488 (1930), and maintains that the judgment should be clear and explicit in its order to constitute res judicata, and warrant an appellate court in affirming, reversing, annulling, or modifying the order. In *Redmond*, the trial judge found attorney Redmond in criminal contempt. The judgment in *Redmond*, in combination with a meager record, merely recited that the court found Redmond guilty of contempt, when or how was left to conjecture and speculation. *Id*. at 488-89. In the case at bar, the circuit judge judiciously preserved a very thorough and complete record, and this record is more than sufficient to support the circuit court's finding of contempt. See

17

*Miss. Ass'n of Educators v. Trs. of Jackson Mun. Separate Sch. Dist.*, 510 So. 2d 123, 126 (Miss. 1987). In addition, the judgment of conviction clearly and explicitly enumerated the judge's basis for finding Hampton in contempt.

¶50. After the August 27 hearing the circuit judge ordered Hampton to appear and explain her absence from the August 27 hearing. The circuit judge allowed Hampton numerous opportunities to explain her absence. Hampton was also allowed to call witnesses. However, the judge was unconvinced that her absence in this matter was reasonable. The judge determined that Hampton was in direct contempt of court for her willful, malicious and contumacious absence.

¶51. Hampton, provided the clerk of court with a forecast of her absence when she stated "she may or may not attend" the hearing. Moreover, the court was diligent and tireless in its efforts to contact Hampton on August 27 with no avail. Finally, the judge gave Hampton every opportunity to explain her absence and vindicate the situation. We are in agreement with the circuit court. Hampton's actions were willful, intentional, malicious, contumacious, and they should not have been excused. The record fully supports the finding of the circuit court. Therefore, we find that Hampton is guilty of criminal contempt beyond a reasonable doubt. Thus, this issue is without merit.

## CONCLUSION

¶52. For these reasons, we affirm the judgment of the Circuit Court of Winston County.

¶53. **CONVICTION OF CRIMINAL CONTEMPT AND SENTENCE OF THREE (3) DAYS IN THE WINSTON COUNTY JAIL; PAY A FINE OF $100.00; PAY RESTITUTION IN THE SUM OF $1,500.00 IN ATTORNEY'S FEES TO GARY STREET**

18

**GOODWIN, ESQ.; AND PAY RESTITUTION IN THE SUM OF $283.75 TO THE COURT REPORTER, MIKE SEGURA AND PAY COURT COSTS OF $425.00, AFFIRMED.**

**WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., AND GRAVES, J., CONCUR IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**