IRVING, P.J.,
for the Court:
¶ 1. After the Circuit Court of Lowndes County affirmed Gregory Mastin’s convictions for disorderly conduct and resisting arrest, he appealed, raising five issues, which we restate as follows:
I. Whether the State failed to prove that Mastin’s spoken words constituted disorderly conduct;
II. Whether Mississippi Code Annotated section 97-35-7(1)® (Rev.2014),[1] as applied in this case, violates Mastin’s First Amendment right to free speech and is thus overly broad;
III. Whether the State failed to ádvise Mastín of the disorderly-conduct statute that he was being prosecuted under in violation of Article 3, Section 26 of the Mississippi Constitution and the Sixth Amendment to the United States Constitution;
IV. Whether Mastin’s initial seizure was in violation of the Fourth Amendment to the United States Constitution as well as Article 3, Section 23 of the Mississippi Constitution, requiring reversal of his convictions; and
V. Whether the evidence is insufficient to support the judgment or whether the judgment is against the overwhelming weight of the evidence.
¶ 2. Finding insufficient evidence to support the convictions under section 97-35-7(1)®, we reverse and render.
*734 FACTS
¶ 3. While conducting a driver’s license checkpoint, Deputy Paul Greggs discovered that Mastin’s Alabama-issued driver’s license, which was valid under Alabama law, was expired under Mississippi law;[2] so he asked Mastín to move his vehicle to the side of the road. Mastín then parked his vehicle on the roadside and in front of Deputy Greggs’s patrol car, and Deputy Greggs asked Mastín to step out of the vehicle. After doing so, Mastín handed his license to Deputy Greggs. At some point, Mastín got back inside1 his vehicle, where he waited while Deputy Greggs was in his patrol car verifying that Mastin’s driver’s license was not suspended. While still in his patrol car, Deputy Greggs prepared an expired-license ticket to give to Mastín.
¶ 4. After walking to Mastin’s vehicle, Deputy Greggs again asked Mastín to step out of the vehicle, and Mastín complied.[3] According to Deputy Greggs, as he and Mastín stood near the rear of the vehicle, Mastín yelled, screamed, and refused to accept the ticket.[4] According to Deputy Greggs, at that point, he arrested Mastín for disorderly conduct.
¶ 5. In the Justice Court of • Lowndes County, Mastín pleaded, guilty to the expired-license charge, and following a bench trial, the justice court convicted him of disorderly conduct and resisting arrest. Mastín appealed both convictions to the County Court of Lowndes County, which found him guilty of both charges. As stated, the circuit court affirmed the convictions, resulting in this appeal.
DISCUSSION
¶6. Preliminarily, we note that Mastín failed to preserve his second issue for appeal. Therefore, it is procedurally barred. Simmons v. State, 805 So.2d 452, 468 (¶¶ 5-6) (Miss.2001) (citations omitted). We also note that issue one is subsumed in issue five, which tye find dispositive. And because we find issue five dispositive, we pretermit discussion of Mastin’s third and fourth issues.

Sufficiency of the Evidence

¶ 7. When reviewing a challenge to the legal sufficiency of the evidence,
an appellate court considers the evidence in the light most favorable to the prosecution...-. [Ajppellate court[s] will reverse and render, if the facts- and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable jurors could not have found beyond a reasonable doubt that the, defendant was guilty. The Mississippi Supreme Court has held that our relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Gray v. State, 169 So.3d 982, 984 (¶ 9) (Miss.Ct.App.2015) (internal citations and quotation marks omitted).
¶ 8. On appeal, Mastín argues that the evidence was insufficient to support a conviction for disorderly conduct. In re *735 sponse, the State argues that Deputy “Greggs arrested Mastín for disorderly conduct based on his actions, behavior[,] and words.” The State also argues that Mastin’s refusal of the expired-lieense ticket constituted disorderly conduct.
¶ 9. Mastín was charged by affidavit with committing disorderly conduct “[b]y yelling ánd cursing, stating [that] he wasn’t paying the f- ticket he was being issued[,] ..: [and] yelling this is f-b-.” Although a statute is not listed in the charging affidavit, the State concedes that the correct charging statute is section 97-35-7(l)(i), which reads as follows;
Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:
⅜ * *
[ajct or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct ....
(Emphasis added).'
¶ 10. During direct examination at trial, Deputy Greggs testified that after he asked Mastín to step out of his vehicle the second time, Deputy Greggs “tried to hand [the ticket] to [Mastín, who] made the statement that [Deputy Greggs] didn’t have to give [Mastín] the [ticket][ — ]that [it] was b-Deputy Greggs also testified that although he urged Mastín to take the ticket, informing him that he could be arrested;for driving with an expired license, Mastín “crossed his arms and again refused to take the ticket and continued to act .disorderly [by][y]elling [and] screaming.” However, on cross-examination, Deputy Greggs admitted that Mastín took the ticket, as shown by the following colloquy:
Q: So in your police report and in your sworn testimony[,] Mr. Mastín did actually take the ticket from you?
A: That’s correct.
Q: Okay. And when he took the ticket and then he said another protest of — -to you about giving the ticket, that’s when you arrested him?
A: Continuously yelling, that’s correct.
Q: And at no time prior to that, prior to your advising him that [he was] under arrest, Mr. Mastín, did Mr. Mastín threaten you physicallyt?]
A; Did not.
[[Image here]]
Q: Okay. So his actions that you considered for I believe disorderly conduct were his spoken words? '
A: And his actions and his refusal to take the citation, as I testified earlier, for an expired driver’s license, a minor citation that any law enforcement officer can issue anyone....
¶ 11. Deputy Greggs also admitted on cross-examination that he had not gotten upset or felt threatened by Mastin’s words. He further admitted that Mastín had not attempted to provoke a physical, altercation with him. During trial in the county court, Deputy Greggs testified that the basis for the disorderly-conduct charge was1 Mastin’s spoken words “[a]nd his actions and his refusal to take the [ticket.]” However, he admitted that during trial in the justice court, he testified that the basis for., the charge was Mastin’s use of “profanity and the loud tone in which it was used.”
*736 ¶ 12. Officer Jason Humbers, who was also present at the checkpoint, testified during trial in the county court. During his direct examination, he testified as follows:
Q: You didn’t have any dealings with Mr. Mastín?
A: No, sir[J I did not.
Q: How far apart were you and Officer Greggs [initially]?
A: From where he was on the side of the road?
Q: Yes, sir.
A: Okay. I’d probably say [twenty feet]. Maybe a little f[a]rther.
Q: And he was at a vehicle that was pulled over?
A: Yes, sir.
[[Image here]]
Q: So[,] at any point[,] did you realize that something was out of the ordinary?
A: Yes, sir.
Q: When was that?
A: I was checking driver’s licenses. I looked over[,] and I noticed Deputy Greggs speaking to Mr. Mastín, and I heard him ask if ... the license was suspended[,] and I heard him reply no, and I went back to what I was doing[,] which was checking licenses. I don’t know exactly how long, but I recall turning back around[,] and I saw Deputy Greggs had [Mastín] by the wrist[,] and I could tell by the way he was doing it[,] there was a problem.
¶ 13. During Officer Humbers’s cross-examination, he gave the following testimony:
Q: Now, between the conversation you heard about the license being suspended and when you looked back over and saw a struggle, you didn’t hear Mr. Mastín cussing, did you?
A: I didn’t — I wasn’t listening to’ what was being said. I went back — I was checking licenses. I looked over to check on him when [Mas-tin’s] vehicle had pulled over. I went back into checking licensesf,] and I went from checking licenses— I went back — occasionally would glance over to check on him. Deputy Greggs had walked back to the car. I went back to checking licenses on the center line.... And when I looked over — I could hear a commotion. But with the cars on my right side, I couldn’t tell what was exactly being said.
[[Image here]]
Q: [In your police report, you stated that] at no time did you hear Mr. Mastín cuss in any loud manner [at] Deputy Greggs, yes or no?
A: From the time—
Q: Did you say yes or no then?
A: At that particular time, no. He was being disorderly, yes, sir.
Q: So, the only conversation that you can recall hearing when you were out on the street was about the license being suspended?
A: Yes, sir. Initially.
Q: The only thing that drew you back over to Mr. Mastín and Deputy Greggs is that you happened to look over and he was waving you down, he being Deputy Greggs.
A: Yes.
Q: Thank you. So it’s safe to say you never observed any disorderly conduct from Mr. Mastín prior to you looking over and seeing him with his cuff on?
A: Not before that, no.
*737 ¶ 14. As noted, during trial, Deputy Greggs’s initially testified that Mastín had refused the expired-license ticket while yelling, screaming, and cursing. But, on cross-examination, he admitted that in his police report, he had stated that Mastín had taken the ticket. Nevertheless, Deputy Greggs admitted that he did not feel threatened during the stop of Mastín. Deputy Greggs further admitted that Mas-tin never attempted to provoke a physical altercation with him.
¶ 15. To prove that Mastín violated section 97 — 35—7(l)(i), the State was required to prove that (1) Mastín — with the intent to provoke a breach of the peace, or under circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace — refused to promptly comply with or obey a request, command, or order to act or do or refrain from acting or doing something; (2) the purpose of the request, command, or order was to avoid a breach of the peace; (3) the person giving the command was a law-enforcement officer; and (4) the law-enforcement officer — at the time of giving the command, order, or request — had the authority to then and there arrest him for a violation of the law. As to the listed elements, it is clear from the evidence that Deputy Greggs was a law-enforcement officer. Likewise, it is clear that at the time of the events resulting in Mastin’s arrest, Deputy Greggs had the authority to arrest Mastín for driving with an expired license, as there is no evidence that Deputy Greggs was aware of the Alabama law allowing Mastín to drive, with impunity, for sixty days even though his license had expired. However, there is no evidence supporting elements one and two.
¶ 16. We look at the evidence to determine what order, request, or command was given by Deputy Greggs that Mastín allegedly failed to promptly comply with, and if the evidence reveals that no order, request, or command was given, then the State has failed to carry its burden of proof. In looking at the evidence, we point out that it is not clear that a command was ever given. But it is abundantly clear that assuming a command was given, it was a command to Mastín to take the ticket for driving with an expired license. It is also abundantly clear that, according to Deputy Greggs’s own testimony, Mastín took the ticket, albeit not without doing some cursing in the process. But for purposes of this discussion, we accept that he ordered Mastín to take the ticket. Even so, the order or command to take the ticket was not issued for the purpose of avoiding a breach of the peace, for at that point nothing had transpired that could be even remotely viewed as a brewing breach of the peace. It is true that Mastín had gotten outside of his vehicle, but that was at the behest of Deputy Greggs, who had for the second time, with no apparent reason, ordered Mastín out of his vehicle.
¶ 17. As stated, Deputy Greggs admití ted that he did not feel threatened by Mastín, and it is speculation to assert that when Mastín got out of the vehicle on orders from Deputy Greggs, he did so with the intent to provoke a breach of the peace, or under circumstances as may have led to a breach of the peace, or that may have caused or occasioned a breach of the peace. While there is evidence that Mas-tin continued to curse after Deputy Greggs attempted to give him the ticket, there is absolutely no evidence that Deputy Greggs ever ordered Mastín to get back in his vehicle and leave the scene and that Mas-tin refused. And, as discussed above, the record does not support a finding that in ordering Mastín to accept the ticket, Deputy Greggs was attempting to avoid a breach of the peace. So when Deputy *738 Greggs arrested Mastín for disorderly conduct, Mastín had not refused an order or command by a law-enforcement officer to act or do, or refrain from acting or doing, something in order to prevent a breach of the peace.
¶ 18. The State concedes that the resisting-arrest charge is based on Mas-tin’s actions relating to Deputy’s Greggs’s attempt to arrest him for disorderly conduct. Therefore, as we have found insufficient evidence to support the disorderly-conduct charge, it follows that the resisting-arrest charge cannot stand, as the law is clear that one may lawfully resist an unlawful arrest. To prove that Mastín resisted arrest, the State had to prove that Mastín “obstruct[ed] or resist[ed] by force, or violence, or threats, or in any other manner, his lawful arrest ... by a[ ] state, local or federal law enforcement officer.” Miss.Code Ann. §' 97-9-73 (Rev.2014) (emphasis added). Because the evidence was insufficient to establish the legality of Mas-tin’s arrest, it was also insufficient to establish that he resisted a lawful arrest. Accordingly, we reverse and render Mas-tin’s convictions for disorderly conduct and resisting arrest.
¶ 19. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR. CARLTON, J„ DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. During trial, Mastín argued that the State had failed to advise him of the statute that he was being prosecuted under.

.Under Alabama law, “[a] grace period of [sixty] days after [the] expiration date of a driver’s license shall exist for the purpose of driver’s license renewal and the driver’s license shall be valid for this time period.” Ala.Code § 32-6-1. During trial, Greggs admitted that when Mastín was charged with driving with an expired license, he was within the sixty-day grace period prescribed by section 32-6-1.

. Deputy Greggs does not explain why he asked Mastín to step out of his vehicle instead of just handing the ticket to him while he was seated in the vehicle.

. As shown later during our discussion of Deputy Greggs’s cross-examination, he admitted that Mastín did in fact take the ticket.