# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00833-COA

**JABROSKI LLOYD A/K/A GUCCI**                       **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/2015 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | AZKI SHAH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF AGGRAVATED ASSAULT AND SENTENCED TO FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION |
| DISPOSITION: | AFFIRMED - 03/07/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     Following a jury trial, Jabroski Lloyd was convicted of aggravated assault and sentenced to fifteen years in prison, with five years suspended, and five years' post-release supervision. Lloyd argues that the jury's verdict was against the overwhelming weight of the evidence. It was not, so we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     A Bolivar County grand jury indicted Lloyd for kidnapping Kendrick Cage, Keith Thomas, and Patrick Adams (counts I, II, and III) and aggravated assault of Touman Reed and Torian Johnson (counts IV and V). Just prior to trial, the State asked that counts II, III, and V be dismissed because Thomas, Adams, and Johnson were not available to testify.

¶3.     Cage testified that on the night of March 9, 2013, he went to a party at a club in Rosedale. Shortly after midnight on March 10, he left the club with his friends, Thomas and Adams. They got into a blue car owned by Cage's girlfriend. Cage was in the driver's seat, Thomas was in the front passenger's seat, and Adams was in the backseat. Before Cage could start the car, he heard gunshots, and Lloyd jumped into the backseat. Cage did not know Lloyd, but Lloyd had a gun and ordered him to "drive." As Cage drove through town, he bumped a red car that was stopped at a stop sign. Cage started to stop, but Lloyd "had the gun on [him] and . . . told [him] to keep going," so he drove on. Thomas and Adams jumped out of the car when it slowed to make a turn. After Cage turned onto Highway 1 South, he saw the red car he had bumped in the rearview mirror. Lloyd then jumped into the front passenger's seat, leaned out the window, and fired at the red car. As the cars approached the town of Beulah, Lloyd fired his gun again and ordered Cage to "keep on driving or he was going to kill [Cage] like he did someone else." Lloyd used his cell phone to call someone to pick him up, and Cage eventually parked in the town of Benoit. Cage then fled the car and ran into the woods, leaving the key in the ignition and Lloyd in the car. Cage remained in the woods the rest of the night because he was afraid of Lloyd. In the morning, he went to the Bolivar County Sheriff's Department and spoke to Investigator Michael Williams.

¶4.    Reed, an off-duty deputy sheriff, was driving the red car. His cousin, Johnson, was with him. Reed followed the blue car when it left the scene of the collision, and he saw Thomas and Adams jump out of the car a few blocks later. Reed continued to follow the blue car onto Highway 1 South. He ended his pursuit after a passenger in the blue car leaned out the window and fired a gun at his car twice. Reed was certain that a passenger in the car, not its driver, fired at him. One of the two shots struck Reed's car in the front bumper. Reed then went back and found Adams, whom he knew, and Thomas.

¶5.    Investigator Williams interviewed Thomas, Adams, and Reed around 1:30 a.m. He then obtained a warrant and arrested Lloyd at Lloyd's grandmother's house in Rosedale around 3 a.m. Williams collected a gunshot residue kit from Lloyd, which he sent to the Mississippi Crime Lab for analysis. Particles indicative of gunshot residue were found on Lloyd's left palm and the back of his left hand. Crime lab analyst Jacob Burchfield testified that a test is considered "positive" if round particles of lead, barium, and antimony are identified. If all three elements are present but the particles are not round, or if two elements are present and the particles are round, the test is considered "indicative of gunshot residue." It is considered "indicative," rather than "positive," because studies have found that such particles may reflect gunshot residue or exposure to brake pads or fireworks.

¶6.    At trial, Lloyd's attorney, Azki Shah, attempted to impeach Cage with a letter that Shah claimed to have received in the mail in August 2014. The letter was signed by Cage and dated August 6, 2014. In all capital letters, it stated as follows:

06 Aug 2014

Dear, Mr. Shah

3

My name is Kendrick Cage. I am writing for you to visit me at the Bolivar County Correctional Facility in reguards to the false accusations made against Jabroski Lloyd. I was well aware of a past felonious charge that Jabroski Lloyd had. So I chose to make false allegations to the officers to avoid my own incarseration in regards to me accidentally ramming the back of Touman Reed's car. This was the act that set things in motion with authorities. I gladly appreciate if you could visit me here at Bolivar to follow the proper protocol and procedures that need to be followed upon my behalf to let these charges dismissed against your client Mr. Jabroski Lloyd. I do not want to proceed with my false accusations as well as testimonial circumstances. I was never kidnaped nor threatened by Jabroski Lloyd.

Respectfully submitted

[signature]

(Misspellings and other errors in original).

¶7. At trial, Cage testified that in September 2014 he was being held in the Bolivar County Correctional Facility on a domestic violence charge, and a guard told him that his lawyer was there to see him. He was then taken to meet with Shah, whom he had never met before. Shah said, "Hey, Mr. Cage," and asked him to sign the letter. Cage testified that he signed the document without reading it because he thought that Shah was his lawyer and that the document was related to his release on bond. According to Cage, he and Shah discussed his domestic violence charge for five or six minutes, and then Shah left. Cage testified that Shah never mentioned Lloyd or this case. Cage admitted that Shah never stated to him that he was his lawyer. Rather, Cage thought that Shah was his lawyer because a guard told him that. This was consistent with the facility's visitor log, which showed that Shah visited Cage on September 23, 2014, and wrote "client visit" as the purpose of his visit.[1] At trial, Cage

---

[1] The visitor log was attached to a pretrial motion in limine filed by the State but was not offered or admitted into evidence at trial.

4

admitted that he signed the letter; however, he unequivocally denied that he wrote the letter, that its contents were true, or that he mailed it to Shah.[2] He testified that he did not even know what the letter meant by "testimonial circumstances" or "protocol."

¶8. The jury found Lloyd guilty of aggravated assault but could not reach a verdict on the charge of kidnapping, so a mistrial was declared on that count. The court denied Lloyd's motion for judgment notwithstanding the verdict or a new trial and sentenced him to fifteen years in prison, with five years suspended, and five years' post-release supervision. Lloyd filed a timely notice of appeal and argues that the jury's verdict was against the overwhelming weight of the evidence.

## DISCUSSION

¶9. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005). We must "view the evidence in the light most favorable to the verdict," and we must affirm unless "[t]he trial court . . . abuse[d] its discretion in denying a new trial[.]" *Id.* at 845 (¶19).

¶10. Lloyd's sole argument on appeal is that the verdict is against the overwhelming weight of the evidence because Cage is a "liar" and was impeached by the letter he signed. We

_____

[2] Shah attempted to introduce what he represented to be the envelope in which he received the letter. According to Shah, the envelope would show that the letter was mailed to him from the facility. However, even assuming that the letter was mailed from the facility, Lloyd was being held there too. The trial judge excluded the envelope, which was not marked for identification or made a part of the record on appeal.

5

disagree. Lloyd presented no evidence tending to prove his innocence after the State rested, and the letter was used for impeachment only and was not admitted into evidence. Thus, there was *no substantive evidence of innocence* to "weigh" against the evidence of Lloyd's guilt. *See Moffett v. State*, 456 So. 2d 714, 719 (Miss. 1984) ("The prior inconsistent out-of-court statements made by one not a party may not be used as substantive evidence."). Accordingly, it cannot be said that the verdict is "contrary" to *any* evidence, much less "contrary to the overwhelming weight of the evidence."

¶11. Moreover, even if it were clear that Cage had recanted at some stage, that alone would not require a new trial. *See Turner v. State*, 771 So. 2d 973, 976 (¶9) (Miss. Ct. App. 2000) ("Afficionados of television lawyer dramas may be under the impression that a new trial is automatically required when the sole eyewitness to a crime recants condemning testimony. Under Mississippi law, however, this is not so and for good reason."). "[T]his Court will not 'pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief.'" *Jones v. State*, 95 So. 3d 641, 647 (¶20) (Miss. 2012) (quoting *Massey v. State*, 992 So. 2d 1161, 1163 (¶12) (Miss. 2008)). "When a criminal case is tried to a jury, the members of the jury act as the finders of fact." *Brown v. State*, 764 So. 2d 463, 467 (¶9) (Miss. Ct. App. 2000). "They are charged to listen to the evidence, observe the demeanor of the witnesses, and decide the issue of the credibility of the witnesses and what weight to give to any particular piece of evidence." *Id.* This is true even with witnesses who have given prior inconsistent statements. *Id.* at (¶10).

¶12. In this case, Cage testified unequivocally that Lloyd was the person who shot at

Reed's car. His testimony is sufficient to uphold the verdict regardless of any alleged prior inconsistent statement. It is certainly sufficient here given the unanswered questions surrounding the purported recantation and the suspicious circumstances under which it was obtained. The verdict is not against the overwhelming weight of the evidence. Therefore, the trial judge did not abuse his discretion in denying the motion for a new trial.

¶13.   **THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**