# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00509-COA

**MARILYN BRADFORD**                                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/17/2021 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON KAY HARTMAN |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/19/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.

### GREENLEE, J., FOR THE COURT:

¶1. In 2019, a grand jury for the Second Judicial District of Bolivar County indicted Marilyn Bradford for three counts of simple assault on a law enforcement officer. After a trial, Bradford was convicted of simple assault on Officer Justin Coleman (Count I); however, a mistrial was declared as to charges of simple assault on Officer Jarvis Smith and Officer Kierre Sellers (Counts II and III). Bradford was sentenced to serve two years in custody followed by three years of post-release supervision. She was enrolled in the Intensive Supervision Program and began serving her sentence under "house arrest."

Bradford was also ordered to continue treatment with a center called Life Help and to seek an evaluation and treatment for anger management at the Mississippi Department of Mental Health.[1]

¶2.     On appeal, Bradford claims that there was insufficient evidence to support the jury's verdict. Specifically, Bradford asserts that her arrest was unlawful and that the State failed to prove that Officer Coleman sustained a bodily injury. Alternatively, Bradford claims that the jury's verdict was against the overwhelming weight of the evidence. After review, we affirm Bradford's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶3.     On Saturday, March 2, 2019, Officer Coleman, Officer Smith, and Officer Sellers with the Cleveland Police Department responded to an incident at a Wal-Mart store in Bolivar County. When the officers arrived, Bradford told them that the store would not return her bank card. Bradford was moved away from the customer service center and to a bench near the entrance of the store. An officer then retrieved Bradford's bank card and returned it to her, which seemingly calmed her down.

¶4.     On video footage obtained from the officers' body cameras, the store manager can be heard suggesting that Bradford previously had been banned from the store.[2] This statement

---

[1] The court further ordered that Bradford's sentence shall run consecutive to any and all sentences previously imposed, that Bradford shall continue all recommended medications, and that Bradford shall sign any HIPAA paperwork or any necessary documents in order to provide the attorney and probation office with a list of all treatment and any prescriptions recommended.

[2] Video footage of the events that transpired at Wal-Mart was obtained from Officer Smith's and Officer Coleman's body cameras and was played for the jury at Bradford's trial.

caused Bradford to become upset again, and Bradford disputed that she previously had been banned from the store. Officers can be heard telling Bradford to calm down, and Bradford responded that the officers did not need to raise their voices at her. Then the officers explained to Bradford that she could leave the premises or go to jail. On the video footage, Bradford can be seen standing up and gesturing while yelling at the officers. At least one officer told Bradford to leave the premises again. Then Bradford yelled, "I bet you I be back up in here." When an officer asked Bradford if she wanted to go to jail, she yelled, "I ain't going to no jail." An officer can be heard telling Bradford to leave the premises yet again. Then Bradford yelled, "I bet y'all I be back." When an officer told Bradford that she would go to jail, Bradford shouted, "So?" Finally, before her arrest, Bradford can be heard yelling something like, "I'll come back to the m[*********]ing store."

¶5.    In addition to the body camera footage that was played for the jury at trial, the officers testified about what happened before Bradford's arrest. Officer Smith testified that he had tried to calm Bradford down, but the situation escalated. According to Officer Smith, "[u]pon her leaving, [Bradford] kept on with the public profanity." Officer Smith testified that Officer Coleman (who was still inside the store) raised his voice to tell Bradford (who was outside the store) that she was banned from the store, and Bradford responded that she would return to the "m[*********]ing Wal-[M]art." According to Officer Smith, Bradford's continued use of profanity resulted in her arrest.

¶6.    According to Officer Sellers, when Bradford was told that she was banned from the store, she became upset and began cursing and making threats. Officer Sellers could not

3

recall what Bradford said, but he testified that she cursed a lot, threatened them, and would not calm down. According to Officer Sellers, Bradford was arrested because she was cursing in public and failed to comply with their instructions. Specifically, Officer Sellers testified that Bradford was asked to "leave Wal-[M]art and she wouldn't leave."

¶7. According to Officer Coleman, Bradford "kept saying she [was going to] leave but she [would] come back to the store." Officer Coleman testified that when he told Bradford to leave, she responded, "I bet I come back to this m[*********]er." According to Officer Coleman, Bradford was cursing and looking back at the officers, and that is when he decided "enough [wa]s enough." Officer Coleman testified that Bradford hit him in the chest as he reached out to grab her, so he placed her on the ground to gain control of her.

¶8. While the officers attempted to put Bradford in the patrol vehicle, she continued to curse at them. According to Officer Smith, Bradford attempted to spit on them and kicked Officer Coleman and Officer Sellers in the groin. Police Captain Mitch Millican, who was off-duty, testified that he noticed a large crowd at the front of the store and saw that the officers were responding to a disturbance. According to Captain Millican, Bradford continually attempted to kick, bite, and spit on the officers, and she threatened them. Captain Millican testified that Bradford eventually calmed down, was placed in the patrol vehicle, and was transported by Officer Coleman to the Cleveland Police Department.

¶9. When they arrived at the police department, the video footage appears to show Officer Coleman getting out of his patrol vehicle. As he gets out of the vehicle, Officer Coleman can be heard making a grunting sound. Then he can be heard telling another officer that

4

Bradford "got [him] in the genitals." As Bradford was removed from the patrol vehicle, she "b[um] rushed" the officers. Officer Coleman testified that as he attempted to cuff one of Bradford's ankles to a bench in the booking area, she bit him. Officer Coleman acknowledged that he was wearing a jacket and that the bite did not break the skin. However, Officer Coleman testified that the bite "pinched [his] arm," and he grabbed Bradford's head to prevent her from biting him again.[3] Video footage shows Officer Coleman turning Bradford's head away from him, and he can be heard telling Bradford, "You ain't going to bite me."[4] Afterward, Officer Coleman can be heard saying that Bradford "tried to bite [him]," and later he can be heard saying that Bradford bit him.

¶10. Subsequently, Bradford complained of chest pain and was transported to the hospital. Officer Coleman testified that he was also examined by a doctor. He explained, "[Bradford] didn't break the skin or anything[,] but it's protocol to go get checked out due to bites or injuries and stuff like that." Ultimately, the hospital released Bradford, and she was transported to the Bolivar County Correctional Facility.

¶11. Investigator Joe Smith with the Cleveland Police Department testified that Bradford was charged with simple assault on a law enforcement officer, and he believed that she was charged with disturbing the peace. However, after reviewing one of the officers' affidavits, Investigator Smith acknowledged that the affidavit charged Bradford with "[d]isorderly

---

[3] Officer Smith similarly testified that Bradford bit Officer Coleman, but Officer Coleman was wearing a long-sleeve jacket.

[4] Surveillance footage from the police department was played for the jury at trial. Additionally, the officers' body cameras provided video footage of the events that transpired at the police department.

conduct, failure to comply." According to Investigator Smith, at least one of the affidavits stated that Bradford

> did willfully, unlawfully with intent to provoke a breach of the peace, refuse to comply with or obey the request of Justin Coleman, a law enforcement officer who had the authority then there to arrest any person said violation of the law to; [sic] was told several times to stop cursing and she failed to do so.

The charge for disorderly conduct was remanded to the file.

¶12. After the court denied Bradford's motion for a directed verdict and renewed motion for a directed verdict, the jury convicted Bradford of simple assault on Officer Coleman (Count I). The jury did not reach a verdict as to simple assault on Officer Smith and Officer Sellers (Counts II and III), and a mistrial was declared as to those counts. Following the court's denial of Bradford's motion for judgment notwithstanding the verdict or, in the alternative, a new trial, Bradford appealed.

**STANDARD OF REVIEW**

¶13. When reviewing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Reynolds v. State*, 227 So. 3d 428, 436 (¶32) (Miss. Ct. App. 2017). "The issue on appeal is not whether the reviewing court would have found the defendant guilty; rather, the conviction must be affirmed if there was sufficient evidence for 'any rational trier of fact' to have rendered a guilty verdict." *Id*.

¶14. When reviewing a challenge to the weight of the evidence, "we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to

6

stand would sanction an unconscionable injustice." *Lloyd v. State*, 228 So. 3d 953, 956 (¶9) (Miss. Ct. App. 2017). The evidence must be viewed "in the light most favorable to the verdict, and we must affirm unless the trial court abused its discretion in denying a new trial." *Id*.

## DISCUSSION

¶15. Bradford claims that there was insufficient evidence to support the jury's verdict. Specifically, Bradford asserts that her arrest was unlawful and that the State failed to prove that Officer Coleman sustained a bodily injury. Alternatively, Bradford claims that the jury's verdict was against the overwhelming weight of the evidence.

**I.     Whether Bradford's arrest was unlawful.**

¶16. First, Bradford asserts that her arrest was unlawful, and therefore she should not have been convicted of simple assault on a law enforcement officer.

¶17. Although Investigator Smith initially testified that he believed Bradford was arrested for and charged with disturbing the peace, he acknowledged that at least one of the officers' affidavits charged Bradford with disorderly conduct, failure to comply. According to Investigator Smith, again, at least one of the affidavits stated that Bradford

> did willfully, unlawfully with intent to provoke a breach of the peace, refuse to comply with or obey the request of Justin Coleman, a law enforcement officer who had the authority then there to arrest any person said violation of the law to; [sic] was told several times to stop cursing and she failed to do so.

¶18. Our review of whether a lawful arrest occurred "must begin with a determination of whether there was 'sufficient evidence to believe that a breach of the peace was being threatened or a crime was about to be committed.'" *Odem v. State*, 881 So. 2d 940, 946 (¶19)

7

(Miss. Ct. App. 2004) (quoting *Jones v. State*, 798 So. 2d 1241, 1248 (¶14) (Miss. 2001)).

A person is guilty of disorderly conduct if that person,

> with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:
>
> . . . .
>
> (i) Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command . . . .

Miss. Code Ann. § 97-35-7(1)(i) (Rev. 2014).

¶19.    In *Odem*, the defendant was arrested for disorderly conduct after he became agitated about the process for recovering his impounded vehicle from the sheriff's office. *Odem*, 881 So. 2d at 942-43 (¶¶2-6).  This Court examined Odem's language and physical acts to determine whether he had an intent to breach the peace and whether he did in fact breach the peace. *Id*. at 946 (¶19).  This Court found that Odem's "arrest was not solely based on his spoken words but also included consideration of his conduct, behavior, and demeanor." *Id*. Specifically, Odem was "agitated, loud, irate, and was gesturing combatively." *Id*. Additionally, Odem's conduct "indicated that he did not intend to follow the procedures" to get his vehicle; rather, "his behavior indicated that he was intent on creating a scene so that [the officer] would not enforce the procedures and allow [him] to get his vehicle back immediately." *Id*. at (¶20).  Accordingly, this Court held "there was sufficient evidence for [the officer] to believe he had probable cause to arrest Odem." *Id*. at 947 (¶22).

8

¶20.    Similarly, in *Sendelweck v. State*, 101 So. 3d 734 (Miss. Ct. App. 2012), the defendant was arrested for disorderly conduct based on his "actions, behavior, and offensive language." *Id*. at 741 (¶27).  In determining that Sendelweck was lawfully arrested, this Court noted that the officer believed Sendelweck's behavior was threatening and combative in a public place; the officer asked him to step back and calm down, but he failed to comply and instead continued to yell and curse. *Id*. at 740-41 (¶¶25, 27).[5]

¶21.    Likewise, the evidence presented at trial in this case was sufficient to establish that Bradford was lawfully arrested.  While Bradford suggests that there was no basis for her arrest other than her spoken words, the evidence shows otherwise.  Bradford not only cursed at the law enforcement officers, but she also acted in an agitated, loud, irate, and threatening manner.

¶22.    When Bradford heard that she had been previously banned from the Wal-Mart store, she became visibly agitated.  The body camera footage shows the officers telling Bradford to calm down and then explaining to her that she could leave the premises or go to jail.  Bradford can then be seen standing up and gesturing while yelling at the officers.  At least one officer told Bradford to leave the premises again.  Then Bradford yelled, "I bet you I be back up in here."  When an officer asked Bradford if she wanted to go to jail, she yelled, "I ain't going to no jail."  An officer can be heard telling Bradford to leave the premises yet again.  Then Bradford yelled, "I bet y'all I be back."  When an officer told Bradford that she

---

[5] In *Sendelweck*, the charge for disorderly conduct ultimately was dismissed because the affidavit charged Sendelweck with merely refusing to stop yelling and cursing. *Id*. at 737, 741 (¶¶12, 28).  However, the evidence presented at trial was sufficient to establish that Sendelweck had been lawfully arrested. *Id*. at 740-41 (¶¶25, 27).

would go to jail, Bradford shouted, "So?" Finally, before her arrest, Bradford can be heard yelling something like, "I'll come back to the m[*********]ing store."

¶23. Instead of simply leaving the premises on the numerous times she was told to do so, Bradford continued to yell and curse at the officers. Officer Sellers specifically testified that Bradford failed to comply with the instruction to leave the store. It is clear from the testimony as well as the body camera footage that Bradford was told to leave the store for the purpose of avoiding a breach of the peace; however, Bradford's intent was to continue to create a scene.[6] For these reasons, we find that the evidence presented at trial was sufficient to establish that Bradford was lawfully arrested.

## II. Whether the State proved that Officer Coleman sustained a bodily injury.

¶24. Next, Bradford claims that the jury's verdict for simple assault on Officer Coleman (Count I) was not supported by sufficient evidence.

¶25. Under Mississippi law, "[a] person is guilty of simple assault if he . . . attempts to cause or purposely, knowingly or recklessly causes bodily injury to another[.]" Miss. Code Ann. § 97-3-7(1)(a) (Supp. 2016). Assault upon a law enforcement officer acting within the scope of his duty at the time of the assault is an aggravating circumstance. Miss. Code Ann.

---

[6] This case is distinguishable from *Mastin v. State*, 180 So. 3d 732 (Miss. Ct. App. 2015). Mastin was arrested for his spoken words, loud tone, and his refusal to take a ticket from a law enforcement officer. *Id*. at 735 (¶11). In reversing Mastin's conviction for disorderly conduct, this Court noted that while Mastin initially refused the ticket, he ultimately took it, and any "order or command to take the ticket was not issued for the purpose of avoiding a breach of the peace . . . ." *Id*. at 737 (¶¶14, 16). Additionally, there was "no evidence that [the officer] ever ordered Mastin to get back in his vehicle and leave the scene and that Mastin refused." *Id*. at (¶17). Nor did the officer feel threatened. *Id*. at (¶14).

§ 97-3-7(14)(a). Bradford asserts that the State did not present sufficient evidence that Officer Coleman sustained a bodily injury.

¶26. The indictment charged Bradford with "unlawfully, feloniously, purposely, knowingly or recklessly caus[ing] bodily injury to [Officer] Justin Coleman, by striking her fist(s) to his chest, kicking him and/or biting him, while Justin Coleman was acting in his capacity as a law enforcement officer with the Cleveland Police Department." This Court has held that "[i]f the indictment alleges an actual bodily injury to the victim rather than a mere attempt to do bodily injury, there must be some proof that the victim suffered some actual injury, or at least some physical pain as a result of the attack." *Cleveland v. State*, 801 So. 2d 812, 817 (¶15) (Miss. Ct. App. 2001) (citing *Murrell v. State*, 655 So. 2d 881, 884-85 (Miss. 1995), *distinguished on other grounds by Dilworth v. State*, 909 So. 2d 731, 735 (¶16) & n.4 (Miss. 2005)).

¶27. In *Murrell*, the prosecution failed to ask an officer if he had experienced any pain or physical injury when the defendant forcibly slammed him to the ground. *Cleveland*, 801 So. 2d at 817 (¶16) (citing *Murrell*, 655 So. 2d at 883). Additionally, there was no evidence of medical treatment or wound and no testimony concerning pain. *Murrell*, 655 So. 2d at 884. Our supreme court conceded that the evidence of the event itself might reasonably support a jury's inference of physical pain and did not find the prosecution's failure to give rise to a legal insufficiency of the evidence. *Cleveland*, 801 So. 2d at 817 (¶16) (citing *Murrell*, 655 So. 2d at 885). "Instead, the court found the evidence to support an inference of the

11

necessary pain or injury to be so weak as to necessitate a new trial." *Id*.[7]

¶28.    In *Cleveland*, the defendant was convicted of assault on a police officer. *Id*. at 814 (¶1).  On appeal, Cleveland challenged the weight of the evidence. *Id*. at 817 (¶14).  This Court noted that Cleveland relied on *Murrell*, which "would appear to explain why Cleveland frame[d] his argument as an attack on the weight of the evidence rather than on its sufficiency even though the absence of proof of an assault of the necessary gravity to produce either some physical injury or, at the very least, some reasonable measure of pain would suggest that the prosecution's proof was insufficient to convict as a matter of law." *Id*. at 817-18 (¶16).  However, this Court noted that no matter which way the question was analyzed, it was without merit. *Id*. at 818.  In affirming Cleveland's conviction, this Court noted that the officer "testified that he was bitten through his shirt sleeve with sufficient strength to cause visible bite marks and possible penetration to the extent that he required medical treatment for the wound." *Id*. at 818 (¶17).  "He also affirmed that the bite was painful." *Id*.  This Court concluded that "the jury . . . is . . . entitled to draw on the life experiences and the common understanding of the various members of the jury." *Id*. at 818 (¶17).  Furthermore, "[i]t must be conceded that any typical juror could appreciate the inherent strength of the ordinary person's jaw muscles and the potential for an assailant to use those muscles in conjunction with the assailant's teeth to rather easily inflict a very

---

[7] In *Dilworth*, the supreme court later noted, "In the past, our jurisprudence was the source of confusion surrounding the standards of review for sufficiency and weight of the evidence.  However, in *Bush v. State* . . . we retreated from our reasoning in a number of cases to the degree which they erroneously overlapped the standards." *Dilworth*, 909 So. 2d at 735 n.4.

painful and potentially dangerous injury on a victim in close enough proximity to fall prey to being bitten." *Id*.

¶29. In this case, Officer Coleman testified Bradford hit him in the chest, and another officer testified that Bradford kicked Officer Coleman in the groin. Officer Coleman did not testify about any actual injury or physical pain as a result of being hit or kicked, but the video footage appears to show Officer Coleman getting out of his patrol vehicle at the police department; as he gets out of the vehicle, Officer Coleman can be heard making a grunting sound. He can then be heard telling another officer that Bradford "got [him] in the genitals." Additionally, Officer Coleman testified that as he attempted to cuff one of Bradford's ankles to a bench in the booking area, she bit him. He testified that the bite "pinched [his] arm," and he grabbed Bradford's head to prevent her from biting him again. He also testified that he was examined by a doctor.

## CONCLUSION

¶30. We find that there was sufficient evidence for a rational trier of fact to have rendered a guilty verdict for simple assault on a law enforcement officer and that the verdict was not against the overwhelming weight of the evidence. Accordingly, we affirm Bradford's conviction and sentence.

¶31. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**